## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **20-03738-jw**
Adversary Proceeding Number:  **21-80011-jw**

## AMENDED FINAL ORDER

The relief set forth on the following pages, for a total of 28 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/27/2021**



US Bankruptcy Judge
District of South Carolina

Entered: 09/27/2021

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>James Defeo, Jr.,<br><br>        Debtor(s). | C/A No. 20-03738-JW<br><br>Adv. Pro. No. 21-80011-JW<br><br>Chapter 13 |
| James Defeo,<br><br>        Plaintiff(s),<br><br>v.<br><br>Winyah Surgical Specialists, P.A. doing business as Winyah Surgical Specialists,<br><br>        Defendant(s). | **AMENDED FINAL ORDER ON DEFENDANT'S MOTION FOR SANCTIONS** |

This matter comes before the Court on the Motion for Sanctions Against David H. Breen and Matthew M. Breen filed by Winyah Surgical Specialists, P.A., doing business as Winyah Surgical Specialists ("Defendant"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1. David H. Breen and Matthew M. Breen (collectively, "Debtor's Counsel") serve as counsel for James Defeo ("Debtor") in this adversary proceeding.  David H. Breen also represents Debtor in the underlying bankruptcy case.

2. On October 2, 2020, Debtor commenced a Chapter 13 bankruptcy case by filing a voluntary petition, schedules, and statements with the Bankruptcy Court.  Defendant

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such and vice versa.

is a creditor of Debtor but was not listed as such in the initial schedules and statements. Defendant was not served with notice of Debtor's bankruptcy.

3.      On or about November 17, 2020, Defendant mailed an invoice to Debtor seeking payment for a medical debt in the amount of $910.

4.      According to the Complaint, Debtor's counsel contacted Defendant by telephone on or about December 4, 2020, and advised Defendant that Debtor had filed a Chapter 13 bankruptcy case and provided the case number to Defendant.

5.      According to the Motion for Sanctions, after being notified of Debtor's bankruptcy filing, Defendant followed its normal procedure to mark Debtor's account as being subject to bankruptcy but due to an error the settings did not save.

6.      On December 10, 2020, Debtor filed Amended Schedule E/F, which listed Defendant as a creditor with a $910 unsecured claim for a medical bill.  Debtor served the Amended Schedule E/F on Defendant on the same date.

7.      On February 2, 2021, Defendant mailed a second invoice to Debtor seeking payment for the $910 medical debt.  The invoice states "Your account is in default and could be sent to a collection agency.  Please call."  Defendant admits that it had notice of the bankruptcy at the time the invoice was sent but contends that the invoice was automatically sent by its computer system in error.  No further collection efforts or contacts were made by Defendant.

8.      Debtor received the invoice on February 9, 2021.  After receiving the invoice, neither Debtor nor Debtor's Counsel attempted to contact Defendant by telephone regarding the invoice prior to commencing this adversary proceeding on February 15, 2021, by filing a Complaint against Defendant. Both David Breen and Matthew Breen signed the Complaint.

The Complaint seeks an injunction of collection attempts by Defendant and actual and punitive damages[2] pursuant to 11 U.S.C. §§ 105 and 362(k), and includes the following allegations against Defendant that are the subject of this Motion for Sanctions ("the Disputed Allegations"):

    a. "[W]ith a specific intent to violate bankruptcy laws, [Defendant] contacted [Debtor] by mail dated February 3, 2021 illegally attempting to collect a $910.00 debt listed in [Debtor's] bankruptcy case." (Compl., ¶ 9.)

    b. "Notwithstanding being on Notice of this monetary exposure for violating the Automatic stay the Defendant chose to flagrantly, wantonly and with gross disdain and disregard violate the bedrock of the bankruptcy process." (Compl., ¶ 10.)

    c. "The Defendant's acts, by and through its agents, servants and/or employees, establish this creditor as one that does not hesitate to engage in overly aggressive, devious, deceptive, manipulative, oppressive, abusive and illegal collection." (Compl., ¶ 11.)

    d. "Upon information and belief, the Defendant knew of [Debtor's] bankruptcy filing yet willfully, deliberately and intentionally chose to ignore the automatic stay provisions of 11 U.S.C. § 362." (Compl., ¶ 13.)

    e. "[Debtor] would show that said aforementioned collection act [i.e., Defendant's mailing of the invoice] was done with the express intent to annoy, threaten, cause harm, abuse, intimidate or harass him." (Compl., ¶ 14.)

    f. "Defendant has engaged in acts which constitute a flagrant, willful, knowing and intentional violation of the bankruptcy automatic stay." (Compl., ¶ 17.)

    9.    On April 8, 2021, Defendant served a copy of the Motion for Sanctions against David H. Breen and Matthew M. Breen Pursuant to Rule 9011(c)(1)(A), Fed. R. Bankr. P. The Motion for Sanctions asserts that Debtor's Counsel violated Rule 9011(b) by failing to conduct an investigation or inquiry that was reasonable under the circumstances

---

[2]     While not stated in the prayer for relief, the Complaint prominently indicates in the caption on the first page: "**ACTUAL AND PUNITIVE DAMAGES: $50,000.00.**"

before they filed the Complaint containing the Disputed Allegations, which Defendant asserts have no evidentiary support. The Motion further asserts that the Complaint was filed for an improper purpose: to needlessly increase expenses and to a seek payment rather than to stop a stay violation. In the cover letter, Defendant's counsel requested that Debtor withdraw the Complaint and advised that if the Complaint was not withdrawn within 21 days, the Motion for Sanctions would be filed with the Court. On this same date, Defendant also sent an Offer of Judgment to Debtor's Counsel pursuant to Rule 68 of the Federal Rules of Civil Procedure.[3]

10. After being served with the Motion for Sanctions, Debtor's Counsel did not withdraw the Complaint or file an amended Complaint to remove the allegations that are the subject for the Motion for Sanctions or otherwise indicate that they would no longer pursue a claim based on the Disputed Allegations. Debtor also did not accept the Offer of Judgment.

11. On May 3, 2021, Defendant filed the Motion for Sanctions with the Court.

12. Debtor's Counsel filed a response to the Motion for Sanctions on May 16, 2021, asserting that their pre-filing factual inquiry was reasonable and that they were not required to call Defendant prior to filing the Complaint.

13. The Court held a hearing on the Motion for Sanctions on May 19, 2021, which was continued to June 29, 2021. The only evidence presented to the Court in connection with the Motion was copies of emails from Defendant's Counsel to Debtor's Counsel dated April 12, 2021, and May 4, 2021, wherein Defendant's Counsel requested that Debtor's Counsel provide billing records to date to demonstrate damages.

---

[3]   The amount of the Offer of Judgment is unknown by the Court.

**CONCLUSIONS OF LAW**

**I.       Rule 9011 Standard**

All attorneys appearing and filing documents in the bankruptcy court have certain

duties under Fed. R. Bankr. P. 9011 when making representations to the Court. Rule 9011

provides, in pertinent part:

> (b) Representations to the court
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed ***after an inquiry reasonable under the circumstances***,
>
> (1) ***it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation***;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) ***the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery***; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011 (emphasis added).

Rule 9011 closely parallels Rule 11, and accordingly, "[c]ourts may look to case law

interpreting Rule 11 when deciding cases under Bankruptcy Rule 9011." *In re Babcock,* 258

B.R. 646, 651 (Bankr. E.D. Va. 2001) (citing *McGahren v. First Citizens Bank & Trust Co.

(In re Weiss)*, 111 F.3d 1159, 1170 (4th Cir. 1997)); *In re Atlas Mach. & Iron Works, Inc.*,

190 B.R. 796, 806 (Bankr. E.D. Va. 1995). As the party filing the Motion for Sanctions,

Defendant bears the burden of proof of demonstrating that sanctions are warranted under

Fed. R. Bankr. P. 9011(c).

## II.    Motion for Sanctions

In the Motion for Sanctions, Defendant asserts that Debtor's Counsel violated Fed.

R. Bankr. P. 9011(b)(2) by including the Disputed Allegations in the Complaint without first

conducting an investigation or inquiry that was reasonable under the circumstances.

Defendant asserts that had Debtor's Counsel made even a minimal inquiry to Defendant or

made other efforts to gather and investigate the general facts prior to filing the Complaint,

they would have discovered that the Disputed Allegations were false and that the invoice

was sent unintentionally due to computer error. Defendant argues that there was no factual

basis to include the Disputed Allegations.  Defendant further argues that the normal practice

in the bankruptcy bar in this district is for debtor's counsel to contact a creditor who sends

an invoice to a debtor soon after the bankruptcy case is filed prior to filing an adversary

proceeding, which usually eliminates the need for litigation.

Rule 11 requires that an attorney conduct a reasonable investigation of the factual

and legal basis for a claim prior to filing a complaint. *See Brubaker v. City of Richmond,* 943

F.2d 1363, 1373 (4th Cir. 1991) (citing *Cleveland Demolition Co., Inc. v. Azcon Scrap

Corp.,* 827 F.2d 984, 987 (4th Cir. 1987)); *In re Sammon,* 253 B.R. 672, 678 (Bankr. D.S.C.

2000). Moreover, "the pre-filing investigation must appear objectively reasonable," meaning

that the pre-filing factual investigation "must uncover some information to support the

allegations in the complaint." *Brubaker,* 943 F.2d at 1373. "A complaint containing

allegations unsupported by *any* information obtained prior to filing violates the required

prefiling factual investigation." *Id.* (citing *In re Kunstler,* 914 F.2d 505, 516 (4th Cir. 1990),

*cert. denied,* 499 U.S. 969 (1991)) (emphasis in original). This Court has previously noted

that "the language of [Rule 9011] emphasizes the requirement of a prefiling inquiry, and

courts have held that the standard used to determine whether a reasonable inquiry was conducted is an objective one, which explores the "reasonableness under the circumstances." *In re Sammon,* 253 B.R. at 678 (citing *In re McCallister,* 123 B.R. 393, 395 (Bankr. D. Or. 1991). The Advisory Committee Notes to Rule 11 provide that Rule 11 "require[s] litigants to 'stop-and-think' before initially making legal or factual contentions" and "emphasizes the duty of candor."

The Court's determination of whether an investigation was reasonable pursuant to Rule 9011(b)(3) is a fact-intensive inquiry which depends on all the circumstances. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 404 (1990); *In re Panthera Enters., LLC.* No: 2:19-bk-00787, 2021 WL 1235788, at *3 (Bankr. N.D. W.Va. Apr. 1, 2021). When noting that "the issues involved in determining whether an attorney has violated Rule 11 likewise involve 'fact-intensive, close calls,'" the Supreme Court has observed that "the district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence." *Id.* at 404. It is implicit from this observation by the Supreme Court that the trial-level court, here the bankruptcy court, may consider its own knowledge of the local bar's litigation practices in making a determination of whether it was objectively reasonable to fail to conduct an inquiry with Defendant or otherwise investigate the facts prior to filing the Complaint.

Furthermore, the Fourth Circuit has adopted the "snapshot" view of Rule 11, which focuses Rule 11 review upon whether the attorney's conduct complied with Rule 11 as of the instant when the signature was placed on the document. *Brubaker,* 943 F.2d at 1382. In other words, only the state of affairs at the time a pleading is filed is relevant to a Rule 11

analysis.  Facts that came to light as this proceeding progressed but that were not available to Debtor's Counsel at the time the pleading was filed should have no bearing on whether Debtor's Counsel had a factual basis for the allegations in the Complaint.  *See id.; In re Faulkner,* No. 96-33001, 1998 WL 34342248 (Bankr. E.D. Va. May 12, 1998).

### III.    Debtor's Counsel's Response

Debtor's Counsel makes three arguments in opposition to the Motion for Sanctions: (1) their factual inquiry was reasonable; (2) they were not required to call Defendant prior to filing the Complaint according to this Court's decision in *Waters v. McLeod Loris Seacoast Hospital;* and (3) Rule 11 does not extend to isolated factual errors, committed in good faith, according to the Fourth Circuit's decision in *In re Bees.*

Debtor's Counsel first argues that their inquiry was objectively reasonable at the time the Complaint was filed, relying solely on their efforts in response to an earlier invoice sent to Debtor by Defendant in November of 2020, *prior* to its receiving notice of the bankruptcy filing.  Debtor's Counsel asserts that they engaged in efforts to determine the proper telephone number for Defendant and contacted Defendant by telephone on or about December 4, 2020, to advise of Debtor's bankruptcy filing.  During that call, Debtor's Counsel also obtained the correct mailing address to receive notice. Debtor's counsel further argues that Defendant received multiple notices of the bankruptcy case filing in December of 2020 and a copy of the order confirming plan in January of 2021.

None of Debtor's Counsel's referenced efforts relate to the mailing of the second invoice which is the subject of the claim for willful violation of automatic stay.  The record reflects a negligible, if any at all, investigation into the facts by Debtor's Counsel.  It appears from the Complaint that the only evidence available to Debtor's Counsel at the time of the

filing of the Complaint was the disputed invoice received by Debtor and Debtor's statements that he experienced stress and worry upon receiving that invoice.

However, the Complaint contains several specific allegations regarding the mindset of Defendant, including that Defendant "chose to flagrantly, wantonly and with gross disdain and disregard violate the bedrock of the bankruptcy process" and that "the collection act was done with the *express* intent to annoy, threaten, cause harm, abuse, intimidate or harass [Debtor]," but there was no investigation or inquiry conducted by Debtor's Counsel whereby such a mindset or intent could have been expressed or revealed by Defendant. Debtor's Counsel admitted that neither they nor Debtor attempted to contact Defendant after the mailing of the disputed invoice. No witnesses were interviewed regarding the facts of the case.  Prior to filing the Complaint, Debtor's Counsel uncovered no other communications from Defendant to Debtor, such as threatening letters, emails, calls, text messages, personal visits or lawsuits, which would support such allegations.

While Debtor's Counsel's investigation of the facts need not establish the facts to the point of certainty, "readily available avenues of factual inquiry" must be explored. *In re Panthera Enters. LLC,* 2021 WL 1235788, at *5 (citing *In re Obasi*, No. 10-10494 SHL, 2011 WL 6336153 at *5 (Bankr. S.D.N.Y. Dec. 19, 2011)).   The record reveals that Debtor's Counsel had current contact information for Defendant which Debtor's Counsel could have used to contact Defendant regarding the alleged stay violation, but they did not make any effort to determine the veracity of the Disputed Allegations or investigate the circumstances surrounding the mailing of the disputed invoice prior to filing the Complaint. The Court finds that Debtor's Counsel's investigation was not objectively reasonable to support the inclusion of the Disputed Allegations in the Complaint.

Debtor's Counsel appears to rely in part on the Verification of the Complaint to support their claim that the inclusion of the Disputed Allegations was objectively reasonable, presumably arguing that they included the Disputed Allegations based upon information provided by Debtor and sworn to by means of the Verification.  Under Fed. R. Bankr. P. 1008 and 9011, a complaint seeking relief under § 362(k) does not need to be verified. However, "[a] verified pleading *may be* treated as an affidavit and used in the action in any way in which an affidavit would be suitable…." 5A Fed. Prac. & Proc. Civ. § 1339 (4th Ed. 2021) (emphasis added).  "Verification alone does not necessarily convert a pleading into an acceptable affidavit. An affidavit must contain facts that the affiant knows to be true of his or her own knowledge and have a certain level of factual specificity." *Id.* Verified pleadings that are insufficient as affidavits have no more effect than an unverified pleading. *Id.* In reviewing other similar adversary proceedings filed by Debtor's Counsel in this Court, the Court observed that these verifications appear to be standard forms that Debtor's Counsel asks the debtor to sign in each adversary proceeding.

If the Court were to treat the Complaint as an affidavit, the allegations contained therein must be facts of which Debtor has personal knowledge.  The Disputed Allegations primarily relate to Defendant's intent and motivation to act to send the invoice, which are allegations Debtor could not have personal knowledge of without some communication of such intent from Defendant.[4]  The Complaint contains no indication that Debtor otherwise communicated with Defendant regarding the invoice, and no other evidence of

---

[4]     There is no indication from Debtor's Counsel's initial contact with Defendant on December 4, 2020, that Defendant was planning to continue collection efforts despite the existence of the automatic stay or was choosing to ignore the automatic stay.

communication of Defendant's intent to Debtor or Debtor's Counsel has been presented to the Court.

The invoice sent by Defendant, which is attached to the Complaint, is a basic invoice listing the date of service, description of service, charges and payments made. The invoice's only message to Debtor is that "Your account is in default and could be sent to a collection agency. Please call." The mildly worded invoice contains no indication that Defendant intended to "annoy, threaten, cause harm, abuse, intimidate or harass the Debtor" nor does it reasonably lead to an inference that Defendant "does not hesitate to engage in overly aggressive, devious, deceptive,[5] manipulative, oppressive,[6] abusive,[7] and illegal collection." Debtor does not dispute that he owes a debt to Defendant or that his account was in default, therefore the invoice does not appear to be deceptive or devious. The invoice's message that the account "could be sent to a collection agency" is indefinite and does not threaten immediate or certain action against Debtor. The message to "[p]lease call" appears amicable, not oppressive, and does not appear intended to abuse, intimidate, or harass the Debtor. Viewing the invoice together with the Complaint, the Court finds that Debtor's

---

[5]    "Deceptive" is defined as "tending or having power to cause someone to accept as true or valid what is false or invalid: tending or having power to deceive." *Deceptive,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/deceptive (last visited Aug. 19, 2021). "Devious" is defined as "deceptive." *Devious,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/devious (last visited Aug. 19, 2021).

[6]    "Oppressive" is defined as "unreasonably burdensome or severe," "tyrannical," or "overwhelming or depressing to the spirit or senses." *Oppressive,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/oppressive (last visited Aug. 19, 2021).

[7]    "Abusive" is defined as "using harsh, insulting language," "harsh and insulting," "using or involving physical violence or emotional cruelty," or "characterized by wrong or improper use or action." *Abusive,* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/abusive (last visited Aug. 19, 2021).

Verification does not support Debtor's Counsel's claim that the inclusion of the Disputed Allegations was objectively reasonable.[8]

Even if Debtor's Counsel intended to use discovery to reveal facts supporting these claims, counsel may not use discovery to support outrageous and frivolous claims for which there is no factual support. *In re Kunstler,* 914 F.2d 505, 515 (4th Cir. 1990) (finding that making unsubstantiated claims without any factual support constitutes an abuse of the judicial process.); Advisory Committee Note to Rule 11 (noting that even specifically identifying factual contentions as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation and is not a license to join parties, make claims, or present defenses without any factual basis or justification.)[9] As discussed above, the focus of the Court's review in a Rule 11 matter is what was known by counsel at the time the Complaint was signed and filed. *Brubaker,* 943 F.2d at 1382. There was no information available to Debtor's Counsel at the time of the filing of the Complaint which would have allowed him to draw a reasonable inference that the Disputed Allegations were true or that a claim for $50,000 in actual and punitive damages was warranted under the facts of this case.[10] *Brubaker,* 943 F.2d at 1377 (finding that as long as an attorney possesses information from which it is possible to at least "draw an inference," even a "weak one," an attorney's factual allegations are placed beyond the reach of Rule 11 sanctions).

---

[8]    The Court does not accept the Complaint as an affidavit.

[9]    Only one of the disputed allegations was made "upon information and belief," and even this language does not excuse Debtor's Counsel from making a reasonable inquiry into the matter.

[10]    One explanation for Debtor's Counsel's use of the exaggerated and inflammatory language in the Disputed Allegations would be to justify an award of punitive damages for the alleged stay violation.  Another would be to increase the likelihood of a large settlement with Defendant based upon Defendant's perception of a high risk of liability or to inflame the conscience of the Court.

Debtor's Counsel next argues that they were not obligated to call Defendant before filing the Complaint according to this Court's decision in *Waters v. McCleod Seacoast Hospital (In re Waters),* C/A No. 19-05230, Adv. Pro. No. 19-80090, slip op. (Bankr. D.S.C. Feb. 13, 2020).   In *Waters,* which was an adversary proceeding also filed by Debtor's Counsel for a stay violation claim based upon the mailing of two collection letters, the Court was addressing the defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6).   When considering a motion to dismiss, the Court examines the legal sufficiency of the Complaint and its inquiry is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief.   At the motion to dismiss stage, the allegations of the Complaint are accepted as true, no matter how skeptical the Court may be.

The defendant in that case asserted that the claim for punitive damages for willful violation of the automatic stay should be dismissed because there were no allegations of egregious conduct and further argued that a simple phone call from plaintiff's counsel would likely have stopped the collection efforts. The defendant did not argue that it was the practice in the district for debtor's counsel to call prior to filing the complaint for willful violation of the automatic stay.   Viewing the complaint under Rule 12(b) standards, the Court found that there was no requirement in 11 U.S.C. § 362(k) for plaintiff's counsel to call the defendant, noting that the automatic stay is self-executing and debtor sufficiently alleged that defendant had notice of the bankruptcy case and nevertheless took the purported action that constituted a willful violation of the stay.   The defendant did not raise a defense that the stay violation was caused by computer error.

In determining a Rule 9011 violation, the Court's examination of the inquiry upon which Debtor's Counsel based the factual allegations of the Complaint is an entirely

different analysis than the Rule 12(b)(6) analysis.  In the present case, the issue of whether
the Complaint states a valid claim for violation of the automatic stay or punitive damages is
not before the Court.  Instead, the Court is considering whether Debtor's Counsel satisfied
their duty of candor to the Court under Rule 9011 by including the Disputed Allegations in
the Complaint.   The Complaint alleges as facts that Defendant engaged in "overly
aggressive, devious, deceptive, manipulative, oppressive, abusive and illegal collection," but
the information available to Debtor's Counsel prior to filing the Complaint showed only that
Defendant mailed one letter to Debtor after receiving actual notice of the bankruptcy case.
It further alleges that Defendant's mailing of the invoice was "done with the *express* intent
to annoy, threaten, cause harm, abuse, intimidate or harass [Debtor]."

Considering the mild language of the invoice, the absence of other contact by
Defendant, and absence of any evidence of malevolent intent of Defendant, Debtor's
Counsel's inclusion of this allegation goes beyond aggressive advocacy or hyperbole—it is
frankly disingenuous.   Debtor's Counsel relies on the establishment of Defendant's
knowledge of the bankruptcy and automatic stay as justification for these allegations, but
that is not enough to characterize Defendant's conduct in the Complaint as "overly
aggressive, devious, deceptive, manipulative, oppressive, abusive and illegal collection" or
that Defendant had the "specific intent to violate bankruptcy laws."  These words have
specific meanings and potentially affect Defendant reputationally and monetarily.

Defendant argues that Debtor's Counsel had no factual basis or justification to
include the Disputed Allegations.  "A complaint containing allegations unsupported by *any*
information obtained prior to filing, or allegations based on information which minimal
factual inquiry would disprove, will subject the author to sanctions." *Kunstler,* 914 F.2d at

516; *see also Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, at 154–55 (4th Cir. 2002) ("Even if the law could colorably support a claim, a party violates Rule 11(b)(3) where there is no factual support for the asserted claims.")   While there is no express or implied requirement in 11 U.S.C. § 362(k) to contact a defendant in advance of filing a Complaint asserting a § 362(k) claim, Debtor's Counsel's obligations under Rule 9011 to conduct a reasonable investigation of the factual allegations in a complaint may in some circumstances require such contact to ensure that counsel has sufficient evidentiary support to include those allegations where such evidence is not otherwise available.[11] *See In re Kunstler,* 914 F.2d at 514 ("Blind reliance on the client is seldom a sufficient inquiry.") (quoting *Southern Leasing Partners, Ltd. v. McMullan,* 801 F.2d 783, 788 (5th Cir. 1986)).

Debtor's Counsel finally argues that Rule 11 does not extend to isolated factual errors, committed in good faith according to the Fourth Circuit's decision in *In re Bees,* 562 F.3d 284 (4th Cir. 2009).   In *Bees,* the Fourth Circuit considered whether an attorney's omission of a material publication date of a notice in the Federal Register in two documents filed with the court was sanctionable under Rule 11. The district court, acting *sua sponte,* had sanctioned counsel under Rule 11(c)(2), finding that the omission of the publication date was misleading.  The Fourth Circuit, noting that a district court is obliged to use extra care in imposing *sua sponte* sanctions on offending lawyers, found that the district court had

---

[11]     As allowed by *Cooter & Gell v. Hartmax,* based on its familiarity with the local bankruptcy bar's practice and the stay violation adversary proceedings filed in this district, this Court observes that it is not the normal practice in this district for debtor's attorneys to file adversary proceedings seeking $50,000 in actual and punitive damages for violation of 11 U.S.C. § 362(k) based solely upon the mailing of an invoice to a debtor. 496 U.S. at 404. The Court notes that Debtor's Counsel filed two of these adversary proceedings for the same client. After receiving the disputed invoice from Debtor, Debtor's Counsel made no attempt to contact Defendant to determine whether the mailing of the disputed invoice was done with the express intent to annoy, threaten, cause harm, abuse, intimidate or harass the Debtor; whether Defendant willfully, deliberately and intentionally chose to ignore the automatic stay or intended to violate the automatic stay; whether Defendant "does not hesitate to engage in overly aggressive, devious, deceptive, manipulative, oppressive, abusive and illegal collection;" or whether Defendant "was refusing to note all debts and accounts owed by the Debtor as stayed for and from any and all collection activity."

abused its discretion in issuing sanctions because the error appeared to be an inadvertent mistake (as the publication date was provided a few pages later in one document), not a deliberate attempt to mislead or a failure to conduct a reasonable inquiry. The Fourth Circuit stated that [s]uch an isolated, inadvertent error does not justify Rule 11 sanctions." *Id.* at 288.

The present case is distinguishable from *Bees* because the Disputed Allegations do not constitute "isolated, inadvertent errors." There are multiple, deliberate factual allegations included in the Complaint for which Debtor's Counsel had no factual basis to allege. For example, Debtor's Counsel repeatedly asserts that Defendant willfully, deliberately and intentionally chose to ignore the automatic stay and violate the stay with the express intent to "annoy, threaten, cause harm, abuse, intimidate or harass [the Debtor]." It also does not appear that the inclusion of the Disputed Allegations was inadvertent. Moreover, even if the Disputed Allegations had been inadvertently included, Debtor's Counsel could have removed them from the Complaint after being notified of the factual errors by the Motion for Sanctions within the "safe harbor" period provided by Rule 11. The "safe harbor" provision of Rule 11, which requires a Rule 11 movant to serve the other party twenty-one days prior to filing a motion for sanctions with the court, is intended to give the offending party the opportunity to withdraw or correct the offending pleading to avoid the imposition of sanctions. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see also Rector v. Approved Fed. Savings Bank,* 265 F.3d 248 (4th Cir. 2001) ("The primary purpose for [the 1993 amendment that added the safe-harbor provision] was to provide immunity from sanctions to those litigants who self-regulate by withdrawing potentially offending filings or contentions within the 21–day period.").

The Court finds that Defendant has met its burden of demonstrating that Debtor's Counsel failed to make an inquiry that was reasonable under the circumstances to support the inclusion of the Disputed Allegations in the Complaint. Debtor's Counsel was provided with notice and a hearing to present contrary evidence showing they had factual support for the inclusion of the Disputed Allegations in the Complaint.  Debtor's Counsel could have called Debtor as a witness or presented other evidence.  Debtor's Counsel has had a full and fair opportunity to demonstrate by their own testimony or other testimony that they performed a reasonable investigation of the factual basis for Debtor's claims prior to filing the Complaint but has failed to make such showing.  Therefore, the Court finds that sanctions under Rule 9011(b)(3) are warranted in this case.

## IV.    Improper Purpose under Fed. R. Bankr. P. 9011(b)(1)

Defendant additionally argues that sanctions are warranted under Rule 9011(b)(1) because the circumstances indicate that the Complaint was filed for an improper purpose: to needlessly increase the expense of litigation and seek settlement.  Defendant argues that this improper purpose is demonstrated by Debtor's Counsel's failure to extend professional courtesies to Defendant to inquire into the matter and to attempt to resolve the matter with a phone call or letter prior to filing the adversary proceeding. Rule 9011(b)(1) requires an attorney to not present a complaint for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Fed. R. Bankr. P. 9011(b)(1).

"If a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose.  Thus, the purpose to vindicate rights in court must be central and sincere."

*In re Kunstler,* 914 F.2d at 518.  The Court must judge the conduct of counsel under an objective standard of reasonableness and look for objective evidence of counsel's purpose in filing the pleading.   *Id.* at 518-19.   Defendant argues that Debtor's Counsel filed the Complaint for the additional purpose of creating damages in the form of attorney's fees and that under the circumstances of this case, that purpose was excessive.   In support of this claim, Defendant points to the fact that Debtor's Counsel have filed multiple similar lawsuits in this Court, including another in this bankruptcy case, *Defeo v. Radius Global Solutions,* seeking large damage awards based simply upon the mailing of collection invoices to the debtor.   Defendant's counsel further represented to the Court that shortly after the filing Defendant's Answer, she asked Debtor's Counsel for the amount of attorney's fees incurred to the date to assess settlement.   In response, Debtor's Counsel refused to voluntarily provide such information and stated that his attorney's fees and costs incurred to date would only be disclosed through discovery.

Under the circumstances of this case, the Court finds that the Complaint appears to have been filed for the reasonable purpose of seeking to enforce Debtor's rights under the Bankruptcy Code to be protected by the automatic stay from further collection efforts from Defendant.  It also appears, however, that the Complaint was filed for the additional purpose of obtaining a substantial damages award or settlement, including attorney's fees and punitive damages, which may be unjustified under the circumstances of this case. The prominent placement of a demand for $50,000 in actual and punitive damages on the front page of the Complaint and extreme characterization of Defendant's conduct within the Complaint is indicative of Debtor's Counsel's desire to threaten and intimidate the Defendant by increasing the perceived financial risk to Defendant.  This could be considered

bad faith or an improper purpose that is so excessive as to eliminate the proper purpose of seeking the protection of the automatic stay on behalf of Debtor. *See id.* at 518. In light of the Court's finding that sanctions are appropriate under Rule 9011(b)(3), it is unnecessary for the Court to determine this issue at this time.

## V.    Determination of Sanctions under Rule 9011(c)

In the Motion for Sanctions, Defendant requests a sanction in the amount of attorneys' fees and costs incurred by Defendant which could have been avoided had Debtors' Counsel initially contacted Defendant to address the invoice prior to filing the Adversary Proceeding.   This appears to be a request for all attorney's fees incurred by Defendant's Counsel since the filing of the Complaint.   If a bankruptcy court finds that Rule 9011(b) has been violated, Rule 9011(c) permits the bankruptcy court, within its discretion, to impose sanctions upon the offending attorney or party.   *See Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion of a given claim violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion."); *In re Panthera Enterprises, LLC*, No. 2:19-BK-00787, 2021 WL 1235788, at *3 (Bankr. N.D. W.Va. Apr. 1, 2021) (finding that the decision of whether to impose Rule 9011 sanctions falls within the discretion of the bankruptcy court).[12]

---

[12]     The Court has reviewed other cases where sanctions were awarded for violation of Rule 9011(b)(3), including *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) (affirming district court order requiring attorney to pay $10,000 in sanctions for filing a complaint containing representation that was false, misleading, and deceptive and utterly without factual foundation); *In re Belmonte*, 524 B.R. 17, 33 (Bankr. E.D.N.Y. 2015) (requiring debtor's attorney to pay sanctions in the amount of reasonable attorney's fees and expenses incurred by the trustee in opposing removal motion that violated Rule 9011(b) for improper purpose and lack of evidentiary support and prosecuting sanctions motion); *In re Brent*, 458 B.R. 444 (Bankr. N.D.Ill.  2011) (finding that attorney violated Rule 9011(b)(3) by making false applications for compensation and ordering attorney to pay a fine of $10,000 and to complete a course in legal ethics); *Letren v. Trans Union, LLC*, No. PX 15-3361, 2017 WL 4098743, at * 9-10 (D. Md. Sept. 15, 2017), *aff'd*, 770 F. App'x 95 (4th Cir. 2019) (finding that sanctions were warranted for attorney's failure to exercise due diligence to determine that the allegations of the complaint, originally filed *pro se*, lacked factual basis prior to filing amended complaint and pursuing summary judgment on those claims and ordering sanctions of $4,000 and partial reimbursement of the defendant's attorneys' fees in the amount of $4,200); *In re Wall*, No. 16-00763, 2019 WL 522545, at * 9

Rule 9011(c)(2) provides:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated… the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

The Fourth Circuit has further instructed that "the least severe sanction adequate to serve the purposes of Rule 11 should be imposed." *In re Kunstler,* 914 F.2d at 522. The "primary, or 'first' purpose of Rule 11 is to deter future litigation abuse." *Id.*; *see also In re Kilgore,* 253 B.R. 179, 192 (Bankr. D.S.C. 2000). "In determining the proper amount of sanctions, a court should consider the reasonableness of the opposing party's attorney's fees, the minimum to deter, the ability to pay, and factors related to the severity of the rule 11 violation." *In re Kilgore,* 253 B.R. at 192 (citing *Miltier v. Downes,* 935 F.2d 660, 665 (4th Cir. 1991)). Additional factors to consider when setting the sanctions amount include the offending party's history, experience and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, and the risk of chilling the type of litigation involved. *In re Kunstler,* 914 F.2d at 524-25.

This Court has previously stated that the appropriate sanction is typically the amount necessary to reimburse the movant for either the full or a partial amount of the costs, expenses, and attorney's fees incurred as a direct result of the document filed in violation of

---

(Bankr. N.D. Ia. Feb. 8, 2019) (ordering debtor to pay sanctions in the amount of $17,500 for violating Rule 9011(b)(3) by submitting false information on his bankruptcy petition and schedules); *In re Schmelcher,* No. 11-61607, 2015 WL 639076, at *9 (Bankr. N.D.N.Y. 2015) (imposing sanctions under Rule 9011(b)(2) in the amount of attorney's fees and costs incurred by defendant in defense of contempt motion and in prosecution of sanctions motion and directing defendant to file a fee application); *In re Living Hope Southwest Medical Serv., LLC,* No. 09-AP-07023, 2014 WL 7011062 (Bankr. W.D. Ark. May 29, 2014) (imposing sanctions of $19,188 in attorney's fees and expenses against counsel for violations of Rule 9011(b)(2) and (3)).

the Rule. *Kilgore,* 253 B.R. at 192.    The Advisory Committee's Notes to the 1993

Amendments to Rule 11 provide:

> The rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party. Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement. If, for example, a wholly unsupportable count were included in a multi-count complaint or counterclaim for the purpose of needlessly increasing the cost of litigation to an impecunious adversary, any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself.

It is evident that the inclusion of the Disputed Allegations and demand for $50,000 in

actual and punitive damages on the face of the Complaint placed Defendant at a high risk

and heavily contributed to its commitment of significant attorney time and costs to its

defense.    Based on the foregoing, the Court finds that a sanction of the reasonable

attorney's fees incurred by Defendant directly and unavoidably as a result of the Rule 11

violation is appropriate to deter Debtor's Counsel from future similar misconduct.

    In response to this Court's interim Order on the Motion for Sanctions, entered on

August 26, 2021, Defendant's counsel submitted an affidavit on August 31, 2021, which

set forth the amount of attorney's fees billed by counsel relating to this Adversary

Proceeding. According to that affidavit, Defendant's counsel asserts that $36,498 in fees

and $309.60 in expenses should be awarded as reasonable attorney's fees incurred for

services performed directly and unavoidably as a result of the Rule 9011 violations,

maintaining that none of these fees and costs would have been incurred by the Defendant

had the Rule 9011 violations not occurred.    The amount requested appears to represent the

entirety of attorney's fees billed to Defendant by Defendant's counsel related to this

Adversary Proceeding, with the exception of the fees incurred to prepare the fee affidavit,

which were omitted.   The affidavit further provides that Defendant's Counsel billed $13,072.50 in fees specific to the Motion for Sanctions, which included time billed for:

> preparation and service of the initial motion; the filing of the Motion for Sanctions with the Court; preparation for the initial hearing on the Motion for Sanctions; review of the Plaintiff's objection and analysis of the numerous cases cited therein; preparation of oral argument; follow up correspondence to the Court to provide specific information requested at the hearing, along with the compilation of the requested materials; correspondence and a hearing on the possible need for a further evidentiary hearing; preparation for an evidentiary hearing; preparation of a joint statement of dispute for an evidentiary hearing; identification and compilation of exhibits for an evidentiary hearing; and an additional telephonic hearing (in conjunction with the hearing on Motion to Compel Discovery) further discussing whether there was a need for an evidentiary hearing.

Debtor's Counsel filed a responsive affidavit asserting that the $36,807.60 in fees requested by Defendant's counsel were excessive and were not reasonably incurred by Defendant directly and unavoidably as a result of the Rule 11 violation.   Debtor's Counsel separately submitted affidavits under seal regarding their ability to pay a monetary sanction.

Under the circumstances and considering the applicable authority and the record, the Court finds that a sanction award of $10,000, in addition to an order striking the Disputed Allegations from the Complaint for purposes of trial, is reasonable to deter Debtor's Counsel from future similar misconduct.   As instructed by the Fourth Circuit, the Court has determined this amount by considering the factors set forth in *In re Kunstler,* as follows:

### *1. Reasonableness of Defendant's Counsel's Attorney's Fees*

When determining the reasonableness of a party's attorney's fees, the Court applies the lodestar method, which requires a determination of the number of hours reasonably spent

on a matter multiplied by a reasonable hourly rate for such services. *See Weatherford v.*

*Tinmark (In re Weatherford)*, 413 B.R. 273 (Bankr. D.S.C. 2009) (citing *Daly v. Hill*, 790

F.2d 1071, 1077 (4th Cir. 1986)). In addition, the Court should also consider the following

twelve factors adopted by the Fourth Circuit in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226

n. 28 (4th Cir. 1978) (citing factors identified in *Johnson v. Georgia Highway Exp., Inc.*,

488 F.2d 714 (5th Cir. 1974)):

> (1) The time and labor expended; (2) the novelty and difficulty of the
> questions raised; (3) the skill required to properly perform the legal services
> rendered;(4) the attorney's opportunity costs in pressing the instant litigation;
> (5) the customary fee for like work; (6) the attorney's expectation at the
> outset of the litigation; (7) the time limitations imposed by the client or
> circumstances; (8) the amount in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney; (10) the undesirability of
> the case within the legal community in which the suit arose; (11) the nature
> and length of the professional relationship between the attorney and his or her
> client; (12) attorney's fees awards in similar cases.

The Affidavit submitted by Defendant's Counsel provides that Defendant's Counsel

billed 77.1 hours at $375/hour for legal services provided by Christine Brimm, 39.80 hours

at $180/hour for legal services provided by her associate, Brianna J. Morrison, and 12.6

hours at $150/hour for paralegal services. Based on its familiarity with the billing rates of

bankruptcy attorneys in this District, the Court finds that the billable rates charged by

Defendant's Counsel are reasonable in light of their experience, ability, and professional

standing with the Bar of this State. The Court has reviewed the billing statements and finds

that the time entries appear reasonable for the services provided. However, it is not

necessary for the Court to review the fees line by line to determine whether each entry was

necessary, as the Court has wide discretion to set the amount of the sanction at a lesser

amount. *In re Wall,* No. 16-00763, 2019 WL 522545, at *9 (Bankr. N.D. Iowa Feb. 9,

2019).  As the Fourth Circuit has previously stated, "'reasonable' attorney's fees in the context of Rule 11 'does not necessarily mean actual expenses and attorney's fees.'" *In re Kunstler,* 914 F.2d at 523.  The "least severe sanction adequate to serve the purposes of Rule 11 should be imposed," and the primary aim of Rule 11 is to deter future misconduct, not to compensate the moving party. *Id.* at 522. The Court notes that the fees specific to the Motion for Sanctions were $13,072.50. Exercising its discretion, the Court finds that the lesser amount of $10,000 is appropriate in this case.

### 2.  *The Minimum to Deter*

The appropriate sanction amount is the minimum amount that will serve to adequately deter the undesirable behavior. Fed. R. Bankr. P. 9011(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated").  Sanctions should not be used to drive attorneys out of practice or bankrupt the offending attorney. *Kunstler,* 914 F.2d at 524. Nevertheless, the misconduct by Debtor's Counsel was not minor or insignificant.   As discussed above, Debtor's Counsel's inclusion of the Disputed Allegations without a factual basis and their demand for $50,000 in actual and punitive damages on the face of the Complaint placed Defendant at a high risk and heavily contributed to its commitment of significant attorney time and costs to its defense.  Based on all the facts and circumstances, the Court finds that $10,000 is an appropriate amount to deter future misconduct by Debtor's Counsel.

### 3.  *Ability to Pay*

The Court has considered the Affidavits submitted by Debtor's Counsel, including those submitted under seal regarding their financial condition.  These Affidavits indicate

that Debtor's Counsel may experience some financial hardship if a large monetary sanction were imposed.[13] Debtor's Counsel asserts that a reprimand through the publication of this Order is sufficient to deter future acts, but the Court disagrees and finds that some additional monetary sanction is warranted to discourage Debtor's Counsel from continuing their practice of including unsupported allegations in the Complaint.

### 4. Other Factors

#### a. Offending Party's History, Experience and Ability

David Breen more than 30 years of experience practicing bankruptcy in this district. He has filed over one hundred adversary proceedings for willful violation of the automatic stay over the years, many of which were based upon the mailing of simple collection letters. The number of these cases filed by David Breen far exceed the number of such filings by similarly situated debtors' counsel. While Matthew Breen is a young attorney who has been practicing law for less than 4 years, "[i]nexperienced or incompetent attorneys are not held to a lesser standard under Rule 11." *Brubaker,* 943 F.2d at 1373.

Over the past three years,[14] Debtor's Counsel has filed several adversary proceedings containing similar allegations of egregious conduct on the part of various defendants for violations based on the mailing of collection letters with demands for actual and punitive damages ranging from $25,000 to $75,000.[15] Neither David Breen nor

---

[13]     Debtor's Counsel was provided with an opportunity to present financial statements directly to chambers to be filed under seal as evidence of their ability to pay but did not elect to do so.

[14]     Pursuant to an order entered on March 25, 2021 in the underlying bankruptcy case, the Court conducted a review of the records of several adversary proceedings filed by Matthew Breen and David Breen, including settlement reports and disclosures of compensation.

[15]     *Waters v. Beach Anesthesia LLC*, Ch. 13 No. 19-05230-JW, Adv. Pro. No. 19-80085-JW; *Waters v. Carolina Reg. Surgery Center Ltd.*, Ch. 13 No. 19-05230-JW, Adv. Pro. No. 19-80089-JW; *Waters v. McLeod Health*, Ch. 13 No. 19-05230-JW, Adv. Pro. No. 19-80090-JW; *Waters v. Carolina Reg. Surgery Center Ltd.*, Ch. 13 No. 19-05230-JW, Adv. Pro. No. 19-80103-JW; *Pike v. Wakefield Assocs.*, Ch. 13 No. 19-05493-JW, Adv. Pro. No. 20-80008-JW*; Yeager v. Federal Home Loan Mortg. Corp.*, Ch. 13 No. 19-05524-JW, Adv. Pro.

Matthew Breen have been previously sanctioned by this Court. This factor weighs in favor of imposing a monetary sanction, but also supports a finding that a lesser sanction than the full amount of fees requested by Defendant is warranted.

### b. Severity of the Violation

Debtor's Counsel's violation of Rule 11 was considerable. As attorneys practicing before the Court, Debtor's Counsel owe a duty of candor to the Court. The inclusion of the Disputed Allegations in the Complaint without conducting a reasonable investigation or otherwise having any factual basis for their inclusion is a violation of that duty. By engaging in this misconduct, Debtor's Counsel has abused the court system. This factor weighs in favor of a monetary sanction.

### c. Degree to Which Malice or Bad Faith Contributed to the Violation

There is some indication that the misconduct at issue was done by Debtor's Counsel with bad faith. "A party has acted in bad faith if he or she knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Letren v. TransUnion, LLC,* 2017 WL 4098743, at *6. As discussed above, Debtor's Counsel's prominent placement of a demand for $50,000 in actual and punitive damages on the front page of the Complaint and extreme characterization of Defendant's conduct within the Complaint is indicative of Debtor's Counsel's desire to threaten and intimidate the Defendant by increasing the perceived financial risk to Defendant. This factor weighs in favor of a monetary sanction.

---

No. 20-80015-JW; *Mansfield v. BB&T,* Ch. 13 No. 20-02954-JW; Adv. Pro. No. 20-80058-JW; *Defeo v. Radius Global Solutions, LLC,* Ch. 13 No. 20-03738-JW, Adv. Pro. No. 20-80090-JW.

### d.  Risk of Chilling this Type of Litigation

The Fourth Circuit has instructed that court must "constantly bear in mind that [Rule 11] is not to chill the bringing of facially valid lawsuits, or a lawyer's creativity in introducing novel theories of recovery." *Kunstler,* 914 F.2d at 524.  To avoid sanctions, counsel is merely required to have some evidence to support an allegation.  Debtor's Counsel had no factual basis to include the Disputed Allegations in the Complaint. The Court does not believe that a requirement to maintain this minimal pleading and investigation standard would have a chilling effect on the bringing of facially valid lawsuits for willful stay violations.  This factor weighs in favor of a monetary sanction.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion for Sanctions is granted, and Defendant is awarded $10,000 in sanctions, jointly and severally against David Breen and Matthew Breen.  David Breen and Matthew Breen are ordered to pay $10,000 to Winyah Surgical Specialists, P.A. doing business as Winyah Surgical Specialists, c/o Barton Brimm, PA, P.O. Box 14805, Myrtle Beach, SC 29587, within 14 days of the entry of this Order or within such time as extended by the Court upon their request; and

IT IS FURTHER ORDERED that the Disputed Allegations are stricken from the Complaint for purposes of trial.

**AND IT IS SO ORDERED.**