# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re, | C/A No. 20-03738-JW |
| James Defeo, Jr., | Adv. Pro. No. 21-80011-JW |
| Debtor(s). | Chapter 13 |
| James Defeo, Jr., | **ORDER** |
| Plaintiff(s), | |
| v. | |
| Winyah Surgical Specialists, P.A. doing business as Winyah Surgical Specialists, | |
| Defendant(s). | |

This matter comes before the Court upon the Complaint filed by James Defeo, Jr. ("Debtor") against Winyah Surgical Specialists, P.A., doing business as Winyah Surgical Specialists ("Defendant") alleging a willful violation of the automatic stay under 11 U.S.C. § 362(k). Defendant denied that its actions constituted a willful stay violation and a trial was held. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1.      Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on October 2, 2020, C/A No. 20-03738. With the petition, Debtor also filed his schedules and statements, which included a list of Debtor's creditors. The Notice of Chapter 13 Case was served on the creditors listed in the petition.

---

[1]      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such and vice versa.

2.      Debtor inadvertently omitted Defendant as a creditor in his initial schedules and therefore Defendant did not receive notice of Debtor's bankruptcy at the time the case was filed.

3.      In late November 2020, Debtor received an invoice from Defendant seeking payment of a medical debt in the amount of $910.00 ("November Invoice"). At the time Defendant mailed the November Invoice, it had not received notice of Debtor's bankruptcy case.

4.      On December 4, 2020, Debtor's counsel called Defendant and verbally gave Defendant notice that Debtor had filed for bankruptcy. A note was placed in Debtor's medical chart on December 4, 2020, at 3:02 p.m. that "Bankruptcy Attorney Mr. David Breen at 843-445-9915 called to let us know Mr. Defeo has filed for bankruptcy, so we do not send any more bills." On that date, Defendant's office manager opened Debtor's chart to select the "Don't Send Statements" and "Exclude From Collections" boxes so that Debtor would not receive future bills, but it appears that the settings did not save.

5.      On December 10, 2020, Debtor amended his bankruptcy schedules to list the debt owed to Defendant and mailed a copy of the Notice of the Chapter 13 Case and Amended Schedules E/F to Defendant.  Debtor also filed an Amended Chapter 13 Plan, which was also served on Defendant.

6.      On January 5, 2021, the Court entered an Order Confirming the Chapter 13 Plan and served all creditors with a copy of the Order, including Defendant.  Defendant admits receiving the Order Confirming the Chapter 13 Plan.

7.      On February 9, 2021, Debtor received an invoice from Defendant, dated February 2, 2021, seeking payment in the prepetition amount of $910.00 (the "February Invoice").

8.      Two days later, on February 11, 2021, Debtor called his attorney regarding receipt of the February invoice.

9.      On February 15, 2021, Debtor drove to his attorney's office, which is less than 5 miles from his home, and signed a Verification of the Complaint, which asserted Defendant's violation of the automatic stay for the sending of the February Invoice.  The Complaint was filed later that day. Neither Debtor nor his counsel attempted to contact Defendant regarding the February Invoice prior to filing the Complaint.

10.     On February 16, 2021, the Summons was issued by the Court.

11.     On February 22, 2021, Debtor's Counsel contacted Defendant by email to inquire about whether it had retained an attorney to represent it in connection with the adversary proceeding.

12.     On March 17, 2021, Defendant filed its Answer to the Complaint denying violation of the stay and asserting that its actions were not willful because the February Invoice was sent due to inadvertence or computer error. Defendant further stated in its Answer that it did not intend to seek collection of the amount outside of the bankruptcy case and that it had taken actions to immediately mitigate and remedy any potential stay violation.

13.     On April 8, 2021, Defendant's Counsel and Debtor's Counsel participated in a discovery conference pursuant to Fed. R. Civ. P. 26(f) by telephone. During this call, Defendant's Counsel made a settlement offer and asked Debtor's Counsel for the amount of attorney's fees incurred to date to further consider and assess settlement, and Debtor's Counsel refused to voluntarily provide such information, stating that his attorney's fees and costs incurred to date would only be provided through discovery.

14.     Later that day on April 8, 2021, Defendant served an Offer of Judgment to Debtor's Counsel pursuant to Rule 68 of the Federal Rules of Civil Procedure.  The amount of the Offer of Judgment is unknown to the Court.  Defendant's Counsel also delivered a copy of a proposed

Motion for Sanctions on Debtor's Counsel, based on allegations that Debtor's Counsel included certain false and inflammatory allegations in the Complaint without first conducting a reasonable investigation of the facts and that the Complaint was filed for an improper purpose: to needlessly increase the expense of litigation. Defendant's Counsel notified Debtor's Counsel that if he failed to withdraw the Complaint within 21 days, she would file the Motion for Sanctions with the Court.

15.    Defendant's Counsel again requested copies of Debtor's Counsel's billing records by email and telephone on April 12, 2021, by email on May 4, 2021, and through discovery requests served on May 12, 2021.

16.    On May 3, 2021, after no response or amendment of the Complaint, Defendant filed the Motion for Sanctions with the Court.

17.    The Court entered an Order granting Defendant's Motion for Sanctions on August 26, 2021. On September 27, 2021, the Court entered an Amended Final Order on Defendant's Motion for Sanctions, which struck certain disputed allegations from the Complaint and ordered Debtor's Counsel to pay sanctions.[2] In that Order, the Court observed that Debtor's Counsel had a history of filing adversary proceedings for willful violation of the automatic stay seeking significant damages ranging as high as $25,000 to $75,000 based upon the mailing of collection letters.[3]

18.    On November 4, 2021, the Court conducted a trial of this adversary proceeding. During the trial, Debtor testified regarding the damages he claims were caused by Defendant's

---

[2]    The Court's Orders regarding the Motion for Sanctions have been appealed.

[3]    Debtor's Counsel's filing of these types of adversary proceedings was also recently the subject of another Order entered by this Court reviewing the disclosure and reasonableness of compensation they received in four similar adversary proceedings. *In re Waters*, C/A No. 19-05230, slip op. (Bankr. D.S.C. October 26, 2021). In the *Waters* Order, the Court observed that David Breen has filed more than one hundred actions for willful violation of the automatic stay during his 30 years of practicing bankruptcy in this district and has a pattern of practice of bringing adversary proceedings alleging minor creditor communications as violations of the automatic stay, which appear to be motivated to a great degree towards generating attorney's fees for Debtor's Counsel. That Order was not appealed.

alleged willful violation of the automatic stay, including that he had feelings of stress, nausea and loss of sleep for a period of approximately two days, mileage for traveling to his attorney's office to sign the Verification of the Complaint and for traveling to the Court to attend the trial, lost wages of $300 to attend the trial, and attorney's fees in the amount of $17,500.45, which included time for travel and preparation for the trial.[4]

19.    At trial, Defendant's office manager testified that the February Invoice was sent by mistake and that Defendant did not intend for the invoice to go out.  She believed she had taken the necessary steps of checking the boxes in Debtor's medical chart on December 4, 2020 to ensure that no further invoices would be sent.  She admitted that she did not check the chart again when she received the Notice of Chapter 13 Bankruptcy Case, Amended Schedules, and Chapter 13 plan in mid-December 2020.  She also did not check the chart after receiving the Order Confirming Plan in January 2021.  She learned of the adversary proceeding when Debtor's counsel contacted her by letter on February 22, 2021 to inquire whether Defendant had retained counsel.  At that time, she checked Debtor's chart and discovered that the boxes were no longer checked.  She again marked the boxes for no billing and made sure the setting saved. After the February Invoice, no further invoices were sent to Debtor by Defendant.

## CONCLUSIONS OF LAW

Section 362(a)(6) of the Bankruptcy Code provides that the filing of a petition "operates as a stay, applicable to all entities, of … any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(6). The automatic stay under § 362(a) provides a debtor with a breathing spell from the pressure of

---

[4] At trial, Debtor testified that the amount of attorney's fees he incurred was $18,542.00, but an error in the billing rate was identified during trial and Debtor's counsel subsequently submitted a corrected affidavit of attorney's fees, which provided that the amount due was $17,500.45.

collection actions by creditors by halting the collection process for most debts.  The stay also operates to preserve the relative positions and rights of creditors and avoid a "race to the courthouse."  Section 362(k) equips debtors with a powerful tool to preserve the benefits of the automatic stay and discourage creditors from engaging in conduct in violation of the stay.  Under § 362(k), creditors who willfully fail to comply with the automatic stay are subject to a statutory claim for damages, including costs and attorney's fees, and possibly punitive damages in appropriate circumstances. 11 U.S.C. § 362(k). However, not every violation of stay gives rise to a claim under 11 U.S.C. § 362(k)—only "willful" violations are actionable under this section and remediable by an award of damages.

To recover damages, Debtor must demonstrate that (1) a bankruptcy petition was filed; (2) that Debtor is an "individual" protected under the automatic stay provision; (3) that Defendant received notice of the petition; (4) that Defendant's actions in violation of the stay were "willful"; and (5) that Debtor suffered damages.  *In re Hamrick,* 627 B.R. 619, 630 (Bankr. D.S.C. 2021) (citing *Weatherford v. Timmark (In re Weatherford),* 413 B.R. 273, 284 (Bankr. D.S.C. 2009)). Debtor must prove a willful violation of the automatic stay by a preponderance of the evidence. *Warren v. Dill (In re Warren),* 532 B.R. 655, 660 (Bankr. D.S.C. 2015).

Defendant acknowledges that Debtor filed a bankruptcy petition, that Debtor is an individual protected by the automatic stay, that it had notice of Debtor's bankruptcy case, and that an invoice was sent to Debtor after his filing of the bankruptcy petition in violation of the automatic stay. Therefore, the only elements in dispute in this matter are whether Defendant's actions were willful and whether Debtor suffered any damages.

## I.    *Willfulness of Defendant's Stay Violation*

"A willful violation of the automatic stay occurs when a 'creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it." *Id.* (citing *Weatherford,* 413 B.R. at 285; *Budget Serv. Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292-93 (4th Cir. 1986)). The Fourth Circuit has determined that to be liable for a willful violation under § 362(k), the creditor need not act with a specific intent to violate the automatic stay but must only commit an intentional act with knowledge of the automatic stay. *Citizens Bank of Md. v. Strumpf,* 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds,* 516 U.S. 16 (1995). The Court must apply an objective analysis when determining whether an act is willful and does not consider the subjective intent of the creditor. *In re Warren,* 532 B.R. 655, 662-63 (Bankr. D.S.C. 2015). In other words, a willful violation of the automatic stay occurs if the creditor (1) knew the bankruptcy case existed and (2) intended to commit the act which violates the automatic stay.

The First Circuit Court of Appeals has articulated the following standard for determining willful stay violations, which this Court finds persuasive in the absence of direct guidance from the Fourth Circuit:

> A willful violation does not require a specific intent to violate the stay… [i]n cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay.

*Fleet Mortg. Group, Inc. v. Kaneb,* 196 F.3d 265, 269 (1st Cir. 1999) (citations omitted).

In this case, Defendant does not dispute that it had notice of Debtor's pending bankruptcy case at the time it sent the February Invoice to Debtor. Accordingly, upon receipt of notice, Defendant was required to prevent violations of the stay. Defendant bears the burden to prove that it took steps to prevent violations of the automatic stay and rebut the inference that the stay

violation was willful. *In re Rijos,* 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) (applying *Kaneb*

standard). In this case, Defendant used a billing company that generated invoices at its direction

by accessing information from its computer system through a shared server. To prevent an invoice

being sent to a particular patient by its billing company, Defendant had to select the "Don't Send

Statements" and "Exclude From Collections" boxes in their patient's chart in their computer

system. Defendant's office manager testified that if these boxes were checked, no invoices would

be sent by its computer system. Defendant presented evidence of a note entered into Debtor's

patient chart on December 4, 2020, that they had been advised that Debtor had filed for bankruptcy

and should not send any more bills. Defendant's office manager testified that she checked the

boxes on December 4, 2020, to prevent future invoices from being sent. When she reviewed

Debtor's chart again in late February, after Debtor's counsel notified her that the adversary

proceeding had been filed, the boxes were not checked. Defendant's office manager could not

explain why the boxes were no longer checked but stated that she believed it was due to computer

error. She testified that she believed she had taken the necessary steps to prevent future invoices

from being mailed to Debtor. Defendant asserts that it did not intend to send the February Invoice

to Debtor and it was sent due to computer error. Defendant was unaware that its conduct in

utilizing its computer software, which automatically generated invoices based upon Defendant's

input of a range of dates, was violating the automatic stay by sending an invoice in this case.

It appears that the majority of bankruptcy courts have held that a violation of the automatic

stay occurring from intentional creditor action following human clerical or computer error still

constitutes a "willful" violation. *See Duby v. U.S. (In re Duby),* 451 B.R. 664, 674 (B.A.P. 1st Cir.

2011); *Rijos v. Vizcaya,* 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) (finding that the "computer did

it" defense to a willful violation of stay action is not viable); *In re Silk,* 549 B.R. 297 (Bankr.

D.Mass. 2016); *In re Nixon,* 419 B.R. 281, 289 (Bankr. E.D. Pa. 2009) (recognizing majority view and citing cases).

Defendant received additional notices regarding Debtor's bankruptcy case in December and January, which presented additional opportunities for Defendant's employees to review the chart and verify that the bankruptcy had been properly documented and those boxes were checked. However, this was not done. Once notified of a bankruptcy case, a creditor has the burden to ensure that it is not violating the automatic stay by pursuing collection efforts. *In re Highsmith,* 542 B.R. at 747 ("When reasonable, actual notice is received, it becomes a creditor's responsibility to ensure it has not violated the stay…"); *Weatherford,* 413 B.R. 273 ("When a creditor is put on notice of a debtor's bankruptcy case, 'the burden remained with [the creditor] to continue monitoring the status of [the debtor's] bankruptcy if they were going to proceed with any collection action.'").

Defendant asserts that the February Invoice was sent to Debtor due to innocent clerical error. In support of this argument, Defendant cites *In re Peterson* and *In re Hamrick,* two cases from the bankruptcy court in the Western District of North Carolina, which found no willful violation of the stay where the violations were caused by an innocent clerical error that caused no injury to the debtor and were quickly halted and remedied. *In re Peterson,* 297 B.R. 467, 470 (Bankr. W.D.N.C. 2003); *Hamrick v. Defense Finance & Accounting Serv. (In re Hamrick),* 175 B.R. 890 (W.D.N.C. 1994). However, as noted by another bankruptcy court in the Middle District of North Carolina, these cases "have been criticized to the extent that they are interpreted as excusing any violations of the stay resulting from human clerical or computer error, and/or to the extent that the courts hold that willfulness as contemplated by 11 U.S.C. § 362(k) requires specific intent to violate the stay." *In re Highsmith,* 542 B.R. 739, 750 (Bankr. M.D.N.C. 2015).[5]

---

[5]    Defendant further argues that the Court should find no willful violation because its sending of a collection letter was inadvertent and a mere technical violation, citing the First Circuit's decision in *In re McMullen,* in which

"The fact that the creditor's conduct was triggered by human or computer error, causing the creditor to misperceive the status of the bankruptcy debtor's account, tends to establish only that the creditor was unaware that its (debt collection) actions violated the stay." *Nixon,* 419 B.R. at 289.  Section 362(k) does not include a specific intent requirement, therefore a debtor does not need to demonstrate that the creditor intended to violate the automatic stay to recover damages. Moreover, a creditor's good faith belief that it was not violating the stay is not relevant in determining whether there has been a stay violation. *In re Gordon Properties, LLC,* 515 B.R. 454, 473-74 (Bankr. E.D.Va. 2013); *Warren,* 532 B.R. at 663 ("[A] creditor's belief that the automatic stay does not apply to his conduct is immaterial to the question of whether a stay violation has occurred, even if such belief is based on advice of counsel.")

While the Court finds credible the testimony of Defendant's office manager that she did not intend to send an invoice to Debtor, the Court is nevertheless constrained to find Defendant's conduct was willful because it intentionally used and relied upon its computer software to send billing invoices to its customers, including Debtor. Further, upon notice of the bankruptcy case, Defendant failed to take the necessary and effective steps to prevent Debtor from receiving future invoices, including verifying that the appropriate boxes were checked and confirming that the setting saved upon receipt of notice of the bankruptcy case and upon receipt of additional notices regarding the bankruptcy cases in December of 2020 and January of 2021. When Defendant's

---

the Court of Appeals concluded that the defendant's filing of a state court complaint against the debtor during the pendency of his bankruptcy case was a mere technical violation of the automatic stay and was not compensable under § 362(h) [now § 362(k)].  In that case, the First Circuit stated that "[g]enerally speaking, a violation will be found "willful" if the creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case." 386 F.3d 320, 330 (1st Cir. 2004) (citing *Fleet Mortgage Group, Inc. v. Kaneb,* 196 F.3d 265, 268-60 (1st Cir. 1999)). Defendant argues that *McMullen* supports the proposition that if a creditor's conduct was "inadvertent" then it is only a technical violation.  However, a close reading of *McMullen* reveals that the First Circuit based their finding that the creditor's conduct was a mere technical violation on the creditor's credible testimony that they did not have *notice* that the debtor's bankruptcy case remained pending at the time they filed their state court complaint, and not on a finding that the creditor's conduct in filing the state court complaint was "inadvertent."

office manager discovered in late February of 2021 that the boxes in Debtor's chart were unchecked, after she learned of the adversary proceeding filed against Defendant, she checked the boxes, exited Debtor's chart, and reopened the chart to confirm that the settings saved. A creditor who relies on a computer program to send billing invoices cannot escape liability for a stay violation by simply arguing that the computer sent an invoice without its knowledge. *In re Highsmith,* 542 B.R. at 753 ("It is the responsibility of the user of any computer program to ensure it is functioning properly… and the system [relied upon to halt post-petition collection efforts] at all times remains properly coded."); *In re Lofton*, 385 B.R. 133 (Bankr. E.D. N.C. 2008) (finding a willful violation of stay and not mere clerical error where defendant had no computer software or other procedure that would provide a method of double-checking to ensure a computer entry was made upon receipt of a bankruptcy notice.); *In re Wedco Mfg., Inc.,* No. 12-21003, 2014 WL 5573433, at *3 (Bankr. D.Wyo. Oct. 31, 2014) ("Stay violations attributable to a computer are not 'inadvertent… acts taken without knowledge of the existence of the stay.'") (quoting *Franchise Tax Bd. v. Roberts (In re Roberts),* 175 B.R. 339 (B.A.P. 9th Cir. 1994)). A creditor must ensure that its computer system is adequately programmed to avoid stay violations and bears the risk of the consequences if the computer does not perform its tasks accurately.[6] Defendant did not meet its burden of presenting evidence that it took the necessary steps to prevent violations of the automatic stay and therefore the element of willfulness is met.

---

[6]    Defendant further argued that Debtor should have attempted to contact it by telephone before filing the adversary proceeding. Debtor's counsel contacted Defendant by telephone in December of 2019 to notify it of Debtor's bankruptcy case and to instruct Defendant not to send any more invoices to Debtor. Under the circumstances of this case, the Court finds a further telephone call to Defendant to ensure it did not intend to pursue collection efforts was not required prior to filing the adversary proceeding. However, in its orders on Defendant's Motion for Sanctions, the Court did note that a telephone call or other communication with Defendant may have been a means to verify the objective reasonableness of the factual allegations in its Complaint.

## II.        *Damages Incurred by Debtor*

Section 362(k)(1) provides that "an individual *injured* by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added).  The burden of proof on the issue of damages is on Debtor.  *In re Banks,* 612 B.R. 167, 172 (Bankr. D.S.C. 2020).  "An award of damages under section 362(k) must be founded on concrete, non-speculative evidence and cannot be based merely on speculation, guess or conjecture." *Id.* (citing *In re Bolin,* No. 12-02442, 2012 WL 4062807, at *2 (Bankr. D.S.C. Sept. 13, 2012)) (internal quotations omitted).

In the Complaint, Debtor alleges that Defendant's stay violation caused him "damages including future lost wages and income, attorney fees, shock, worry, sleep disturbances and other significant emotional harm distinct from the inherent stress of the normal bankruptcy process."

### a.  Emotional Distress Damages

Damages for emotional distress are recoverable as actual damages in a § 362(k) action. *See Weatherford,* 413 B.R. at 288-89.  However, the Court notes that awards for emotional distress damages are generally nominal when the stay violation is associated with the transmission of collection correspondence.  *See, e.g., Deleon v. U.S. (In re Deleon),* No. 95-08130-D, slip op. at *14 (Bankr. D.S.C. Apr. 12, 1996). While the Fourth Circuit has not set forth a standard for awarding damages for emotional distress, this Court has consistently required credible and convincing evidence that clearly shows that a willful violation caused measurable harm to debtor to merit a damages award for emotional distress.  *See In re Hamrick,* 627 B.R. 619 (Bankr. D.S.C. 2021) (denying debtor's claim for emotional distress damages where he failed to "convince the Court that he experienced emotional distress proximately caused by the stay violation itself");

*Weatherford,* 413 B.R. at 289 (awarding emotional distress damages of $1,000 where the debtor presented credible and convincing testimony that she suffered from anxiety and depression as a result of the defendant's actions, conditions requiring medication and counseling); *Romero v. Coventry Credit Union (In re Romero),* No. 10-80051-HB, 2010 WL 4863781, at *9 (Bankr. D.S.C. Nov. 23, 2010) (stating that fleeting or trivial anxiety or distress is insufficient to support an award of emotional distress damages and "an individual must suffer significant emotional harm" to recover). Other courts in the Fourth Circuit have similarly set forth strict requirements of proof for an award of emotional distress damages, mandating that a debtor (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay in order to recover. *See, e.g., In re Wright,* 608 B.R. 648, 645 (Bankr. W.D. Va. 2019); *In re Ojiebe,* 539 B.R. 474, 480 (Bankr. D. Md. 2015); *In re Seaton,* 462 B.R. 582, 603 (Bankr. E.D.Va. 2011); *Green Tree Servicing, LLC v. Taylor (In re Taylor),* 369 B.R. 282, 288 (S.D.W.Va. 2007); *Houck v. Substitute Trustee Servs, Inc. (In re Houck)*, No. 15-5028, 2020 WL 5941415, at *11 (Bankr. W.D.N.C. Oct. 6, 2020). The Court exercises caution in awarding compensation for emotional distress because these damages are difficult to prove and easier to manufacture than other types of damages. *See In re Seaton,* 462 B.R. at 603 (stating that "caution should be high among the guiding principles of a court in awarding compensation for emotional distress.")

At trial, Debtor presented testimony that he experienced temporary nausea, stress, and loss of sleep as a result of receiving the February Invoice. He presented no medical bills or corroborating evidence of the existence or severity of these alleged conditions. Debtor is a middle-aged man who works as a server at Wicked Tuna restaurant and bar in the resort city of Myrtle Beach, South Carolina. He admitted that the distress he experienced did not prevent him from

working his job and that he waited two days before contacting his attorney to report that he had received the February Invoice. He further admitted that the symptoms of distress lasted only two days.  He admitted that he had not sought medical treatment or counseling and did not incur medical or medication bills that might demonstrate concrete or clear evidence of significant harm that could be causally connected to the alleged willful violation of the automatic stay.[7]  The Court finds his testimony regarding emotional distress lacked credibility.  No corroborating evidence, such as testimony of family members or co-workers, was presented to clearly establish that significant emotional harm occurred. *See Williams v. Fairbanks Capital Corp. (In re Williams)*, No. 01-80105-W, 2001 WL 1804312 (Bankr. D.S.C. Nov. 19, 2001) (awarding emotional distress damages where debtor's friend testified about depression suffered by debtor arising from inaccurate affidavit that mortgage lender submitted to court for improvidently granted order for relief from stay); *Young v. Elite Fin. Servs., Inc. (In re Young)*, C/A No. 04-10260-W, Adv. Pro. No. 04-801353-W, slip op. at 7-8 (Bankr. D.S.C. Sept. 15, 2005) (awarding emotional distress damages because debtor's girlfriend corroborated significant harm to debtor). Furthermore, the very nature of the collection letter in this case does not indicate a likelihood of causing significant harm or emotional distress, especially without any indication of prior medical condition or predisposition. The February Invoice is a basic invoice listing the date of service, description of service, charges and payments made.  The Invoice's only message to Debtor is that "Your account is in default and could be sent to a collection agency. Please call." The Invoice is mildly worded and does not threaten immediate or certain action against Debtor or deprivation of property. "Unless the creditor's conduct is particularly egregious, where emotional distress harm would be

---

[7]      He asserted that he did not seek treatment for his distress because he does not have health insurance, but admitted that he has previously sought medical treatment from a physician for other medical issues despite not having health insurance.

readily apparent, the claimant must establish emotional distress with corroborating evidence, such as expert testimony, medical testimony, or credible testimony from non-experts such as family members." *In re Wright*, 608 B.R. 648, 654 (Bankr. W.D. Va. 2019) (quoting *In re Hafer*, No. 13-10568-BFK, 2013 WL 5925167 (Bankr. E.D. Va. Nov. 5, 2013)). There is no evidence of egregious conduct by Defendant such as harassing phone calls or visits to his home or workplace, threats to his person or property, or retention of property of the estate. The Court finds that Debtor's fleeting and trivial assertions of emotional distress as a result of receiving a single collection letter are insufficient to support an award of emotional distress damages in this case.

     b.  <u>Other Damages</u>

"Courts traditionally view 'actual damages' as a broad umbrella term, including, but not limited to, lost time damages, out-of-pocket expenses and emotional damages." *In re Ojiegbe,* 539 B.R. 474, 479 (Bankr. D.Md. 2015). Debtor asserts that he incurred $16.76 in mileage for travel to his attorney's office on February 11, 2021 and February 15, 2021 regarding this adversary case.[8] The Court finds that these damages are recoverable.

Debtor further testified that he had to take the day off work to testify at the trial and therefore had lost wages of $300. He also testified that he incurred mileage expenses for traveling from Myrtle Beach, SC to Charleston, SC for trial. The evidence admitted at trial reflects that he incurred a total mileage expense of $104.04 to attend trial.[9] Based on the Court's finding that Debtor failed to mitigate his damages, as discussed more fully below, these damages are not recoverable.

---

[8]     At trial, Debtor testified that he incurred mileage in an unspecified amount traveling 5 miles from his home to his attorney's office as a result of the stay violation. The $16.76 figure and dates of visits were provided in Debtor's responses to Defendant's Interrogatories, which were introduced into evidence by Defendant.

[9]     These figures were provided in Debtor's Answers to Defendant's Interrogatories.

c. Attorney's Fees

Debtor seeks $17,500.45 in attorney's fees incurred in connection with the filing and

prosecution of his § 362(k) claim. Under § 362(k), debtors are entitled to recover *reasonable and*

*necessary* attorney's fees incurred as a result of the violation of the automatic stay.  *In re Hamrick,*

627 B.R. 619 (Bankr. D.S.C. 2021); *In re Banks,* 612 B.R. 167 (Bankr. D.S.C. 2020); *In re James-*

*Jenkins*, No. 18-80074-HB, 2019 WL 354700 (Bankr. D.S.C. Jan. 25, 2019); *Corbett v. Corbett*

*(In re Corbett),* No. 11-80142-JW, slip op. (Bankr. D.S.C. March 29, 2012).  The billing timesheet

reflects that David Breen billed 24.87 hours at the rate of $400/hour for in-court services and

$350/hour for out-of-court services and Matthew Breen billed 34.33 hours at the rate of $250/hour.

### a. *Lodestar & Barber Factors Analysis*

1. Billing Rate

Based on its familiarity with the billing rates of bankruptcy attorneys in Chapter 13 cases

in this District, the Court finds that David Breen's billable rate of $350 per hour (out of court) and

$400 per hour (in court) for the adversary proceeding is reasonable.  The Court similarly finds

Matthew Breen's billable rate of $250 per hour is reasonable.

2. Time and labor expended

The time and labor billed by Debtor's Counsel appears overstated for several reasons.

First, Debtor seeks attorney's fees for fees of $650.00 for services relating to a hearing

conducted on April 7, 2021 regarding whether Debtor's Counsel timely complied with disclosure

of compensation requirements under 11 U.S.C. §§ 329 and 528 in both adversary proceedings filed

in connection with Debtor's bankruptcy case. One of the issues presented in that hearing included

whether co-counsel, Matthew Breen, as a "debt relief agency" under 11 U.S.C. § 101(12A),

complied with disclosure requirements under § 528(a) in the two adversary proceedings filed in

Debtor's bankruptcy case by providing legal representation in those proceedings without executing a written agreement with Debtor. The Court finds it is not appropriate to recover as damages in a § 362(k) action attorney's fees for matters relating to Debtor's Counsel's compliance with disclosure requirements of the Bankruptcy Code, which is a main bankruptcy case matter.

Second, the Complaint asserts a basic claim for willful violation of the automatic stay under § 362(k) based upon Defendant's mailing of a single collection letter after receiving notice of the bankruptcy case with no complicating factors or circumstances warranting punitive damages. This type of stay violation is typically resolved without court intervention because the debtor's actual damages from receiving a collection letter are nominal and the only damages are attorney's fees. Debtor's Counsel failed to make genuine efforts to mitigate the damages in this case considering the Defendant's immediate cessation of collection efforts upon receipt of notice of the filing of the Complaint, Defendant's early effort to negotiate a settlement, and Debtor's Counsel requiring Defendant to participate in costly discovery to obtain his billing timesheets on which damages are based to be able to determine a reasonable settlement offer.  The evidence presented by Debtor indicates that a settlement offer was made by Defendant on April 8, 2021 and rejected by Debtor on April 9, 2021.  According to the billing timesheet, as of April 9, 2021, Debtor's Counsel had incurred attorney's fees in the amount of $3,165.45 (including the $650 in fees for attendance at the hearing on Debtor's Counsel's compliance with disclosure requirements, which is not a reasonable charge).  It does not appear from the record that Debtor made any counteroffers.

 "It is well established that reasonable and necessary fees do not include unnecessary litigation costs." *In re Collum,* 604 B.R. 61, 68 (Bankr. M.D. Ala. 2019). The Court retains discretion to eliminate unnecessary or plainly excessive fees.  *In re Silk,* 549 B.R. 297 (Bankr. D.Mass. 2016) (citing *America's Serv. Co. v. Schwartz-Tallard (In re Schwartz-Tallard),* 803 F.3d

1095, 1101 (9th Cir. 2015)).  In addition, in this district, debtors have a duty to mitigate all damages arising from a willful violation of stay.  *See In re Sammon*, 253 B.R. 672, 681 (Bankr. D.S.C. 2000) (concluding that debtors failed to prove damages arising from a willful violation of the stay because debtors had not "sufficiently demonstrated that they suffered damages which could not have been mitigated by them or counsel"); *In re Brittner,* No. 20-80053-DD, 2021 WL 2389285, at *4 (Bankr. D.S.C. Jun. 10, 2021) ("A debtor… has a duty to mitigate any damages that may occur as a result of a stay violation.").  The Court finds that the filing of the Complaint was reasonably necessary to stop Defendant's collection efforts.  However, once served with the Complaint, Defendant immediately took steps to prevent future invoices from being sent to Debtor and demonstrated such to Debtor's Counsel. No further violations of the automatic stay occurred. In its Answer, filed on March 17, 2021, Defendant notified Debtor that the February Invoice was sent by mistake.  At trial, Debtor testified that had he known that Defendant had sent the February Invoice by mistake, he would not have filed the lawsuit.

In cases where the conduct violating the automatic stay has ceased, "debtor's counsel has an obligation to take only those steps reasonable and necessary to remedy the violation.  What steps ultimately prove reasonable and necessary will depend upon the circumstances of the particular case." *In re Voll,* 512 B.R. 132, 143 (Bankr. N.D.N.Y. 2014).  At the time of the Rule 26(f) discovery conference on April 8, 2021 and after receiving the offer of judgment, Debtor and his counsel had a duty to reassess the adversary proceeding to determine whether further litigation was necessary. Fed. R. Civ. P. 26(f) sets forth the parties' responsibilities during that conference as follows:  "In conferring, the parties *must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case*; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable

18

information; and develop a proposed discovery plan." Fed. R. Civ. P. 26(f); Fed. R. Bankr. P. 7026(f).

Defendant's offer of judgment and filing of Motion for Sanctions also provided reasonable cause to review the merits of the adversary proceeding, including a review of Debtor's claim for damages, particularly considering the potential risk and consequences to the Debtor if he is ultimately unable to obtain a more favorable judgment than the unaccepted offer. *See* Fed. R. Civ. P. 68(d) (requiring the offeree to pay the costs incurred after the offer was made if the judgment the offeree finally obtains is not more favorable than the unaccepted offer).  At the time of the receipt of the offer of settlement and the proposed Motions for Sanctions from Defendant, Debtor's Counsel should have been aware that Debtor had not sought medical treatment for his alleged temporary distress and had no measurable evidence or corroboration of emotional distress. Debtor's Counsel has significant experience filing willful violation of the automatic stay actions and is aware of the burden of proof for emotional distress damages in this district.[10]  Without evidence of significant emotional distress or egregious conduct by Defendant justifying an award of punitive damages, it was unreasonable for Debtor and his counsel to refuse to cooperate in efforts to resolve the matter by providing his timesheets to Defendant's counsel.[11] *See In re Seaton,* 462 B.R. at 605 ("In appropriate circumstances, a court may determine that a motion made pursuant to § 362(k) was wasteful and limit the attorney's compensation award to the amount that he would have earned had he handled the matter efficiently.") (quoting *In re Robinson,* 228 B.R.

---

[10]    In addition, on June 10, 2021, Debtor's Counsel was denied recovery of attorney's fees in a similar willful violation of the stay action where there were no other actual, measurable damages in a case before Judge Duncan in *Brittner v. Beach Anesthesia, LLC,* No. 20-80053-DD, 2021 WL 2389285, at *4.  Judge Duncan found that the nearly $20,000 in attorney's fees requested by Debtor's Counsel in that case were not reasonable considering the impact of COVID-19, changes in business practices, the brief time that transpired, the lack of effort to mitigate damages, and complete absence of other actual measurable damages before the attorneys' fees were incurred.
[11]    During a hearing on Debtor's Motion to Compel Discovery, Debtor's Counsel advised the Court that they did not provide the timesheets due to the Defendant's filing of a Motion for Sanctions against them.

75, 86 (Bankr. E.D.N.Y. 1998); *Mosher v. Evergreen Mgmt., Inc., (In re Mosher),* 432 B.R. 472, 477 (Bankr. D.N.H. 2010) ("Considering that there are no other actual damages in this case and the violation concerned approximately \$620, the Court finds that [debtor's counsel]'s projected amount of 23.8 hours spent on this case is unreasonable.") "Mitigation reflects the sound judicial policy that profit-making from violations of the automatic stay is inherently improper." *In re Silk,* 549 B.R. at 303 (internal quotations omitted). In light of the *de minimis* harm to Debtor and absence of mitigation efforts by Debtor's Counsel, the Court finds that the attorneys' fees incurred by Debtor's Counsel after April 9, 2021 are excessive and unnecessary under the circumstances of this case and therefore are not recoverable.

1. Novelty and difficulty of the questions raised

The issues presented in this adversary proceeding are neither novel nor complex. The Complaint asserts a basic claim for willful violation of the automatic stay under § 362(k) based upon Defendant's mailing of a single post-petition collection letter to Debtor after receiving notice of Debtor's bankruptcy case. The Complaint appears to be a form and follows the same form and content used in the other adversary proceeding filed earlier in Debtor's bankruptcy case, *Defeo v. Radius Global Solutions LLC,* Adv. Pro. No. 20-80090. There were no complicating facts or issues present.

2. The skill required to properly perform the legal services rendered

The services provided by Debtor's Counsel did not require unusual skills to perform.

3. The attorney's opportunity costs in pressing the instant litigation

Debtor's Counsel did not present any evidence of lost opportunity costs because of pursuing this adversary proceeding.

4. The amount in controversy and the results obtained; the customary fee for like work; and fee awards in similar cases

Debtor's Counsel's filing of this willful violation of the automatic stay action seeking damages of more than $50,000 for the post-petition mailing of a single post-petition collection letters appears excessive and overzealous. The customary attorney's fee for similar cases with similar facts appears to range between $250 and $2,500. [12] Historically, debtors' counsel have usually received a lower amount of attorney's fees for willful violation of the automatic stay actions that are resolved early in the proceeding. *See, e.g., In re James-Jenkins,* No. 18-03063-HB, Adv. Pro. No. 18-80074-HB, 2019 WL 354700 (Bankr. D.S.C. Jan. 25, 2019) (awarding $1,500 in attorney's fees following default judgment); *In re Smith,* C/A No. 05–05537–JW, slip op. (Bankr. D.S.C. Dec. 19, 2005) (awarding $2,186.00 in attorney's fees); *In re Miller,* C/A No. 04–15104–W, Adv. Pro. No. 05–80032–W, slip op. (awarding $2,350.00 in attorney's fees).

5. <u>The attorney's expectation at the outset of the litigation</u>

Debtor's Counsel's expectation at the outset of the litigation was to stop the Defendant's conduct of sending collection letters to Debtor. It appears that upon notification of the filing of the Complaint, Defendant ceased sending collection letters, therefore Debtor's Counsel accomplished the primary objective of the lawsuit without the need for further prosecution to trial. It further appears that Defendant engaged in efforts to settle the matter early in the litigation and that Debtor's Counsel could have responded to Defendant's inquiry regarding the attorney's fees incurred to date.

---

[12] Fees more than $5,000 have been awarded in a few cases in this district, but only in circumstances where the creditor engaged in egregious or threatening conduct in violation of the automatic stay or the matters were heavily litigated. *In re Banks,* 612 B.R. 167 (Bankr. D.S.C. 2020) (awarding attorney's fees of $12,000 for willful violation of the automatic stay following default judgment where creditor refused to return debtor's vehicle and two separate damage hearings were required due to the parties' inability to reach a settlement); *In re Warren,* 532 B.R. 655, 665 (Bankr. D.S.C. 2015) (awarding $8,200 in attorney's fees after trial in an adversary proceeding that was pending for more than 6 months and included motions practice and discovery); *Young v. Elite Fin. Servs. (In re Young)*, C/A No. 04–10260, Adv. Pro. No. 04–80353, slip op. (Bankr.D.S.C. Sept. 15, 2005) (awarding $9,027.00 in attorney's fees in a matter where the creditor repossessed the debtor's truck and retained it for more than a month and the creditor requested several continuances and "vigorously litigated" the matter). The circumstances justifying a large fee award are not present in this adversary proceeding.

6. The time limitations imposed by the client or circumstances

Debtor's Counsel has not asserted or presented evidence showing that there were any time limitations imposed by Debtor or that circumstances compelled higher than average fees in connection with this adversary proceeding.

7. The experience, reputation, and ability of the attorney

David Breen has more than 30 years of experience practicing bankruptcy in this district and has filed hundreds of actions for willful violation of the automatic stay. Matthew Breen is relatively new to bankruptcy practice, having practiced less than five years before this Court.

8. The undesirability of the case within the legal community in which the suit arose

There is no evidence indicating that the issues involved in the adversary proceeding are undesirable within the bankruptcy bar of the District of South Carolina.

9. The nature and length of the professional relationship between the attorney and his or her client

Debtor's Counsel's length of relationship with Debtor appears to be limited to the course of this chapter 13 case with the adversary proceedings having been filed shortly after confirmation of the plan.

### *Proportionality of Fees*

In determining the reasonableness of an attorney's compensation in connection with § 362(k) actions, courts have also considered the proportionality of the attorney's fees sought relative to the damages incurred by the debtor. *See, e.g., In re Dougherty-Kelsay*, 601 B.R. 426, 450 (Bankr. E.D. Ky. 2019) ("Any award for attorney's fees must be proportional to the damages claimed."); *In re Seaton*, 462 B.R. at 605 ("The proportionality of the attorney's fees sought to the damages incurred by a debtor is a significant factor in determining reasonableness.") (citing cases); *In re Russell,* 441 B.R. 859, 863 (Bankr. N.D.Ohio 2010) ("[T]he attorney fees requested should

22

bear a reasonable relationship to the amount in controversy."). An attorney's compensation may be limited to the amount he would have earned had he handled the matter more efficiently, particularly under circumstances where "the injury caused and damages incurred, other than attorneys' fees, only amount to the cost of appearing in court to litigate the contempt motion; the burden of requiring the debtor's attorney to notify the creditor of the violations is insignificant; and no bad faith on the part of the defendant exists." *In re Seaton*, 462 B.R, at 605 (citing *In re Robinson,* 228 B.R. 75, 86 (Bankr. E.D.N.Y. 1998); *Price v. Pediatric Academic Assoc., Inc.,* 175 B.R. 219, 222 (S.D.Ohio 1994)).

The amount of attorneys' fees sought by Debtor's Counsel as damages is significantly disproportionate to the *de minimis* damages Debtor appears to have experienced as a result of the stay violation. Debtor's total compensable damages prior to trial are $16.76. Debtor did not prove damages for emotional distress. Even if Debtor's other damages from attending trial were included as compensable damages in this case, $17,500.45 in attorney's fees would represent 97.6% of the total damages. The fees must be reasonable compared to the results obtained.

Based on the foregoing, the Court finds that $17,500.45 fee asserted by Debtor for attorney's fees in connection with this adversary proceedings is not reasonable. When determining the appropriate amount of attorney's fees, "the court must balance two important guiding policies. On the one hand, the court must discourage willful violations of the stay. On the other, the court must avoid encouraging debtor's counsel from incurring substantial fees 'simply because those fees will be shifted to adversaries.'" *In re Holyfield,* 2019 WL 2387045, at *7 (quoting *In re Voll,* 512 B.R. 132, 141 (Bankr. N.D.N.Y. 2014)). After reductions for the $650 of attorney's fees related to a hearing regarding counsel's disclosures of compensation, and fees that were unreasonably incurred after the offer of settlement was rejected by Debtor on April 9, 2021, the

billing timesheet reflects attorney's fees and costs of $2,515.45.[13]

### III.    Other Claims by Debtor

In the parties' Joint Statement of Dispute filed on July 7, 2021 and at the trial, Debtor argued that Defendant's conduct in sending the February Invoice violated the Order Confirming Plan entered on January 5, 2021 and breached its duty of care to Debtor. Based on these allegations, Debtor appears to also seek damages for contempt of court pursuant to 11 U.S.C. § 105 and a state law negligence claim. The Court finds that these claims were not pled in the Complaint and are not properly before the Court. Even if these claims were properly presented, the Court finds it unnecessary to decide these claims since Debtor has been granted relief based on his § 362(k) claims. *In re Waters,* 2020 WL 1884191, at *4 (Bankr. D.S.C. Feb. 13, 2020) ("To add additional remedies under state law for a stay violation would contravene 11 U.S.C. § 362(k), which limits the remedy for such violations to "actual damages, including costs and attorneys' fees, and, in appropriate circumstances… punitive damages" and would exceed the limits of its authority under 11 U.S.C. § 105."); *In re Holyfield,* No. 16-67309, 2019 WL 2387045, at *4 (Bankr. N.D.Ga. Jun. 3, 2019) (stating that "contempt is not the proper remedy for a violation of stay since Section 362(k) provides debtors with an express right of action to address willful stay violations.")

---

[13]    The Court has examined all of the billing records provided by Debtor's Counsel for services through trial and believes there would be grounds for substantial reductions to the remaining billing entries if the Court were to consider the attorney's fees incurred through trial, including, but not limited to, a deduction of $5,874.50 in attorney's fees incurred for Debtor's Counsel's defense of Defendant's Motion for Sanctions for violations of Fed. R. Bankr. P. 9011(b). Defendant's Motion for Sanctions was granted by Order entered August 26, 2021 and Debtor's Counsel was ordered to pay $10,000 in sanctions to Defendant, representing a portion of the attorney's fees incurred by Defendant in prosecuting the Motion for Sanctions. In the Order granting the Motion for Sanctions, the Court found that Debtor's Counsel violated Rule 9011(b)(3) by including certain false and inflammatory allegations in the Complaint without a objectively reasonable factual basis to do so and those inflammatory allegations were stricken from the Complaint. It is not appropriate for Debtor's Counsel to recover attorney's fees from Defendant for their unsuccessful defense of a Motion for Sanctions based upon their conduct which the Court found in violation of Rule 9011(b)(3).

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant willfully violated the automatic stay and is liable to Debtor for actual damages, including attorney's fees, pursuant to 11 U.S.C. § 362(k).  The Court awards Debtor damages of $16.76 for mileage expenses.  Debtor's request for emotional distress damages is denied for failure of proof.  The Court further finds that Debtor should be awarded attorney's fees and costs in the amount of $2,515.45.  The Court finds that punitive damages are not appropriate under the circumstances of this case because there is no evidence of egregious conduct by Defendant.  Accordingly, Defendant shall pay Debtor damages in the total amount of $2,532.21 within 14 days of the entry of this Order, subject to the applicability of Fed. R. Civ. P. 68(d).

**AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**01/14/2022**



US Bankruptcy Judge
District of South Carolina

Entered: 01/14/2022